#28780, #28781-aff in pt & rev in pt-MES
**2020 S.D. 9**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *
#28780

MICHAEL J. KNECHT,                          Plaintiff and Appellee,

    v.

GAYLE EVRIDGE AND
LINDA EVRIDGE,                              Defendants and Appellants.
-------------------------------------------------------------------------------------------------------------
#28781

MICHAEL J. KNECHT,                          Plaintiff and Appellant,

    v.

GAYLE EVRIDGE AND
LINDA EVRIDGE,                              Defendants and Appellees.

* * * *
APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
PERKINS COUNTY, SOUTH DAKOTA
* * * *
THE HONORABLE ERIC J. STRAWN
Judge
* * * *

BRIAN DONAHOE
DANIEL B. WEINSTEIN of
Donahoe Law Firm, P.C.
Sioux Falls, South Dakota                   Attorneys for appellee and
                                            appellant Michael J. Knecht.


CASSIDY M. STALLEY
THOMAS G. FRITZ
DANA VAN BEEK PALMER of
Lynn, Jackson, Shultz
   & Lebrun, P.C.
Rapid City, South Dakota                    Attorneys for appellants and
                                            appellees Gayle and Linda
                                            Evridge.
* * * *

ARGUED
MARCH 26, 2019
OPINION FILED **02/26/2020**

#28780, #28781

SALTER, Justice

[¶1.]　　　　　Michael Knecht and Gayle and Linda Evridge (Evridges) entered into two similar three-year lease agreements that allowed Knecht to rent the Evridges' ranch. The leases also referenced the possibility that Knecht would obtain the Evridges' permit to graze cattle on an adjoining national grassland. Following a series of disputes between the parties, the Evridges refused Knecht's lease payments for the second year. Knecht filed suit, seeking a declaratory judgment and alleging breach of contract, negligent misrepresentation, deceit, and fraud. The Evridges counterclaimed seeking damages under the agreements.

[¶2.]　　　　　The parties stipulated to a preliminary court trial to determine their rights under the lease agreements and a subsequent jury trial to resolve the remaining factual issues. The court found one lease valid and binding, and the other lease valid but voidable. A jury later awarded damages to both parties. The Evridges appeal, alleging the circuit court abused its discretion in its evidentiary rulings and in its jury instructions. Knecht also appeals and argues the circuit court erred when it found the second lease voidable instead of void and dismissed his fraud and deceit claims. We have consolidated the appeals and now reverse the circuit court's dismissal of Knecht's deceit claim, which is remanded for trial, and affirm all other issues.

## Background

[¶3.]　　　　　Mike Knecht is a rancher from Lodgepole, South Dakota, who was interested in leasing ranchland for his growing cattle herd. He ran an advertisement in a local newspaper, and Linda Evridge responded, indicating that

-1-

she and her husband were interested in leasing their 3,070-acre ranch as they transitioned into retirement.

[¶4.] The Evridge ranch lies adjacent to the Grand River National Grassland in Perkins County. The national grassland is owned by the federal government and is managed by the United States Forest Service, which has a cooperative agreement with the Grand River Grazing Association (Grazing Association) to administer grazing rights among nearby ranchers with base property.[1] The grazing permits allow qualifying ranchers to graze their livestock on the national grassland during the summer months. The Evridges have received an annual grazing permit from the Grazing Association for over 40 years and were familiar with its rules. At the time of their negotiations with Knecht, the Evridges told him that their ranch was tied to the national grassland, and they held a permit to graze 200 animal units (AUs)[2] during the summer months. The Evridges further advised Knecht that they could transfer their permit to him with the Grazing Association's approval.

[¶5.] Knecht and the Evridges reached an agreement under which Knecht would lease the Evridges' ranch for three years[3] in exchange for an annual rent of $157,000. However, the Evridges insisted that Knecht execute two leases for the

---

1. According to the Grazing Association's rules of management, base property is defined as "[p]roperty to which a grazing preference/privilege is attached."

2. The Grazing Association's rules of management define an animal unit as "one mature (1,000-pound) cow with or without a calf." The AU contemplates the cow will consume 26 pounds of dry matter each day.

3. The parties contemplated a lease term commencing December 1, 2013 and terminating December 31, 2016.

same property with an aggregated annual rent that totaled the agreed-upon amount of $157,000. Knecht acceded, and on December 3, 2013, the parties signed two leases prepared by the Evridges' attorney.

[¶6.]    The leases were entitled an "Agricultural Lease" and a "Supplemental Agricultural Lease" (Supplemental Lease), with only slight substantive differences. One apparent difference concerned the description of the lease price. The Agricultural Lease listed a lease price of $28.55 per acre, or $87,648.50 annually, while the Supplemental Lease listed only a lump sum yearly rent of $69,351.50. Knecht later alleged that when he inquired about the reason for the two leases, the Evridges told him two leases were necessary—one for the Evridge ranch, itself, and one for the ability to graze cattle, or AUs, on the national grassland. Knecht later testified that the Evridges told him "the units were worth something" and instructed him to keep the Supplemental Lease a secret because they did not want "anyone knowing their financial business." Knecht did not seek the advice of counsel before signing the leases.

[¶7.]    Knecht moved approximately 200 head of cattle onto the Evridge ranch in February 2014. The Evridges filed only the Agricultural Lease with the Grazing Association before its March 1, 2014 deadline. Upon receipt of the Agricultural Lease, the Grazing Association transferred the Evridges' grazing permit to Knecht.

[¶8.]    The Evridges knew the Grazing Association could restrict the price they could charge to lease their ranch because it had rejected their previous request to approve a $30.00 per acre lease. The Evridges also knew the Supplemental Lease violated the Grazing Association's rules, which expressly prohibit subleasing

-3-

grazing rights. Knecht, however, testified that he was unaware of these details before signing the leases. He also claimed he was surprised when he received a bill from the Grazing Association for $14,047 to obtain a 2014 grazing permit because he believed his Supplemental Lease payments were for the purpose of receiving the permit. The Evridges had only advised him that he would receive a "small bill" from the Grazing Association for "salt, oilers, and fencing."

[¶9.] During 2014, disputes arose between the parties regarding Knecht's ability to move his cattle between the Evridges' pastures, Knecht's refusal to adopt the Evridges' intensified grazing program,[4] fence repair, and the Evridges' continued use of the ranch for their own cattle and horses. When the Evridges refused Knecht's lease payments for the 2015 year, Knecht deposited the first half of the 2015 lease payments with the Perkins County Clerk of Courts and filed suit, alleging breach of contract and requesting a declaratory judgment establishing the parties' rights under the lease agreements.

[¶10.] In response to the lawsuit, the Evridges alleged that Knecht had materially breached the lease agreements "and/or complete[ly] repudiated the terms of the agreement(s)." In March 2015, the Grazing Association became aware of the Supplemental Lease and suspended Knecht's grazing permit for 2016. After this suspension, Knecht amended his complaint to add the claims of negligent misrepresentation, deceit, and fraud.

---

4. An intensified grazing program is a system of regularly moving cattle through a series of separate, fenced pastures to optimize grass utilization.

[¶11.]     The parties agreed to resolve the claims through separate, sequential trials. Their stipulation contemplated an initial court trial on the declaratory judgment action concerning the lease agreements and a jury trial for the remaining claims.

[¶12.]     During the course of the three-day court trial, the parties offered divergent testimony about their negotiations and alleged the existence of additional oral agreements. The circuit court issued findings of fact, conclusions of law, and declaratory orders, concluding, in part:

> The consideration for the Agricultural Lease was annual rent of $87,648.50 to the Evridges in exchange for the right to graze cattle and farm the 3,070 acres comprising the Ranch . . . [and] is a valid contract . . . legally binding on the parties as of December 3, 2013 for a term of three years.
>
> The consideration for the Supplemental . . . Lease was annual rent of $69,351.50 in exchange for the right to graze an additional 200 cows and calves and six bulls directly tied to the Grand River Grazing Association permit. The Supplemental . . . Lease allows for grazing on the Grand River Grazing Association land. It states: "In the event the permit is not transferred, LESSEE may terminate or renegotiate this lease." The power to terminate in the event the permit does not transfer is not available in the Agricultural Lease.
>
> The Supplemental . . . Lease has all the essential elements of a valid contract and is legally binding. However, Knecht may, pursuant to the written terms of the Supplemental . . . Lease choose to terminate this lease because the grazing rights . . . did not transfer to Knecht for 2016. Therefore, the Supplemental . . . Lease is a voidable contract.

As to the latter determinations regarding the Supplemental Lease, the circuit court effectively decided that Knecht's exclusive remedy in the event the grazing permit was not transferred was termination.

[¶13.] The circuit court acknowledged that a written contract takes precedence over any oral agreements and ambiguities in contract language are resolved against the drafter. The court ordered that: (1) Knecht was not obligated to implement an intensified grazing plan as alleged by the Evridges; (2) the Evridges could use Section 36 of their ranch from the beginning of October to the beginning of December under the "shared use" provision in the leases; (3) the Evridges could keep the same number of horses and bulls on the ranch that were on the ranch when Knecht took possession; and (4) the evidence did not establish the leases were subject to rescission.

[¶14.] Following the court trial, the circuit court ordered the clerk of courts to release Knecht's rent payments to the Evridges. The court also ordered Knecht to pay the second half of the annual rent due under the 2015 Agricultural and Supplemental Leases, as well as the first half of the 2016 Agricultural Lease obligation, totaling $122,325.25. Knecht filed a notice of appeal, alleging that the circuit court's order was final and appealable, and contending the circuit court erred when it ordered the release of the rent money and additional payments. After the notice of appeal, the circuit court entered an order approving a supersedeas bond that also contained a passing reference to the declaratory orders, stating simply they were "final, pursuant to SDCL § 15-6-54(b)." We determined the orders were not final and dismissed Knecht's appeal in an unpublished order.

[¶15.] Knecht voluntarily withdrew his negligent misrepresentation claim, and the circuit court granted the Evridges' motion for summary judgment on Knecht's separate fraud and deceit tort claims. The court concluded that:

> The dispute between the parties is covered by the remedies included in the terms of the contract. Each party can still assert claims of damages arising from breach of contract. [Knecht] has failed to identify any duty created by law independent of the parties' contractual relationship which would amount to an independent tort. [Knecht] had actual as well as constructive notice that the [Grazing] Association in both leases had to approve the permit and if the permit was not approved the remedy was provided for within the four-corners [sic] of the contract.

[¶16.]     The remaining issue of damages was tried to a jury on December 13-15, 2017. Over the Evridges' objections, the court allowed the jury to hear evidence of the Supplemental Lease, including the Grazing Association's suspension of the 2016 grazing permit. The court reasoned the evidence was relevant to respond to the Evridges' claim that Knecht had overgrazed their ranch in 2016. Knecht argued, in this regard, that the loss of the grazing permit required him to graze more cattle on the Evridges' ranch. The court also denied the Evridges' request to include a jury instruction that listed six of the eight orders from the court's earlier findings of fact, conclusions of law, and declaratory orders.

[¶17.]     The jury awarded damages to Knecht in the amount of $62,800 for 2014, and $40,930.62 for 2015. The jury awarded damages to the Evridges of $20,000 for fencing repairs, and $43,824.25 for the last installment under the Agricultural Lease.

[¶18.]     The Evridges raise the following issues for our review:

1. Whether the circuit court abused its discretion when it admitted evidence regarding the Supplemental Lease and excluded evidence of the intensified grazing program.

2. Whether the circuit court abused its discretion when it denied the Evridges' proposed jury instruction incorporating some of the previous declaratory orders.

>    3. Whether the circuit court abused its discretion when it found
>       sufficient evidence to support the jury's verdict in favor of
>       Knecht and no liability against Knecht for alleged
>       overgrazing and failure to practice good husbandry.

[¶19.]    Knecht's appeal presents three principal issues for our determination,

which we state as follows:

>    1. Whether we have appellate jurisdiction to consider Knecht's
>       issues relating to the Supplemental Lease.
>
>    2. Whether the circuit court erred in declaring the
>       Supplemental Lease valid and enforceable and ordering
>       payment of funds under the Supplemental Lease.
>
>    3. Whether the circuit court erred in granting the Evridges'
>       motion for summary judgment on Knecht's deceit and fraud
>       claims.

## Analysis

### *Evidentiary Ruling on the Supplemental Lease*

[¶20.]    The "[a]dmissibility of evidence is within the sound discretion of the

trial court and its ruling will not be disturbed unless there has been an abuse of

discretion." *Schaffer v. Edward D. Jones & Co.*, 521 N.W.2d 921, 925 (S.D. 1994).

"An abuse of discretion is a fundamental error of judgment, a choice outside the

range of permissible choices, a decision, which, on full consideration, is arbitrary or

unreasonable." *MacKaben v. MacKaben*, 2015 S.D. 86, ¶ 9, 871 N.W.2d 617, 622

(quoting *Gartner v. Temple*, 2014 S.D. 74, ¶ 7, 855 N.W.2d 846, 850).  Our review of

a circuit court's evidentiary rulings requires a two-step process.  *Stabler v. First*

*Bank of Roscoe*, 2015 S.D. 44, ¶ 36, 865 N.W.2d 466, 484.  "First, we 'determine

whether the trial court abused its discretion in making an evidentiary ruling.'"  *Id.*

(quoting *Ruschenberg v. Eliason*, 2014 S.D. 42, ¶ 23, 850 N.W.2d 810, 817).

"Second, we determine whether this error was a *prejudicial error* that in all probability affected the jury's conclusion." *Id.* (quoting *Ruschenberg*, 2014 S.D. 42, ¶ 23, 850 N.W.2d at 817).

[¶21.] "Evidence is relevant if . . . [i]t has any tendency to make a fact more or less probable than it would be without the evidence and . . . [t]he fact is of consequence in determining the action." SDCL 19-19-401 (Rule 401). We have previously held that Rule 401 provides a "lenient standard for relevance" under which evidence "need not conclusively prove the ultimate fact in issue, but only have a tendency to make the existence of any fact that is of consequence . . . more probable or less probable than it would be without the evidence." *Supreme Pork, Inc. v. Master Blaster, Inc.*, 2009 S.D. 20, ¶ 46, 764 N.W.2d 474, 488 (emphasis omitted) (quoting 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*, § 401.04[2][c] (Joseph M. McLaughlin, 2d ed. 2002)).

[¶22.] A court may exclude relevant evidence, however, where its probative force is substantially outweighed by a danger of unfair prejudice, among other considerations. SDCL 19-19-403 (Rule 403). Rule 403 balancing, therefore, requires a disproportionate level of unfair prejudice before relevant evidence may be excluded. We have held, in this regard, that "[o]nce the evidence is found relevant, . . . the balance tips emphatically in favor of admission unless the dangers set out in Rule 403 'substantially' outweigh probative value." *Supreme Pork*, 2009 S.D. 20, ¶ 55, 764 N.W.2d at 490 (quoting *State v. Wright*, 1999 S.D. 50, ¶ 14, 593 N.W.2d 792, 799). Our deferential standard of review contemplates a circuit court's "broad discretion in balancing probative value of evidence against its prejudicial effect

. . . ." *Schaffer*, 521 N.W.2d at 925.

[¶23.] Here, we believe the evidence of the Supplemental Lease and the 2016 grazing permit satisfied Rule 401's accommodating standard for relevance. Knecht offered the evidence to counter the Evridges' claim that he had overgrazed the ranch in violation of the Agricultural Lease. Knecht argued that the previously issued permit to graze his cattle on the national grassland had been precipitously revoked by the Grazing Association when it discovered that the Evridges had deceived it by filing only the Agricultural Lease. As a result, Knecht contended, he had no choice but to place his cattle on the Evridges' ranch. In fact, during trial, Knecht offered to forbear from seeking the admission of evidence and testimony about the suspended grazing permit if the Evridges abandoned their overgrazing counterclaim.[5]

[¶24.] The evidence also survives Rule 403 balancing. The Supplemental Lease and loss of the 2016 grazing permit had significant probative force because they explained the circumstances under which Knecht suddenly found himself without the ability to graze his cattle on the national grassland. They also demonstrated his need to place the cattle, at least for a time, on the Evridges' ranch. Though the Evridges incorrectly argue that Rule 403 is "wholly inapplicable," they nevertheless describe the prejudicial impact of the Supplemental Lease and grazing permit revocation evidence as an effort to unfairly "challenge

---

5. During his offer of proof concerning damages resulting from the loss of the 2016 grazing permit, Knecht testified that he had to feed his cattle in 2016 with hay intended to be used in the spring of 2017. He also claimed that he had to prematurely sell approximately 95 cows.

[their] credibility, honesty and integrity[.]" The evidence was admittedly not flattering for the Evridges, but we do not believe it was unfairly prejudicial. More to the point, we do not believe the danger of unfair prejudice substantially outweighed its probative force.

[¶25.]     Finally, the Evridges claim that the Supplemental Lease evidence should not have been admitted because it was irrelevant, since the circuit court had previously determined Knecht could not seek damages for its breach. This argument is not sustainable because it overlooks the fact that the court's principal reason for admitting the evidence was to counter the Evridges' proof of overgrazing—not to seek damages for a breach of the Supplemental Lease.[6] Under the circumstances, the circuit court did not abuse its discretion when it admitted evidence of the Supplemental Lease and the revocation of the grazing permit.

***Evidentiary Rulings on the Evridges' Intensified Grazing Program***

[¶26.]     In its January 11, 2016 findings of fact, conclusions of law, and declaratory orders, the circuit court found that "[t]here is no mention of the intensi[fied] grazing program in the contracts" and concluded that the "provision[s] allowing [the] Evridges to direct the movement of [Knecht's] cattle [are] vague and

---

6.     Though both leases refer to the Evridges' grazing permit on the national grassland, neither of them contractually obligates the Evridges to provide Knecht with a permit. Both leases restrict the leased premises to the privately owned 3,070-acre ranch and state that the grazing permit is "waived to the Grazing Association."

ambiguous."[7]  Therefore, the court determined that "Knecht was not obligated to implement a Grazing Plan on the Ranch."

[¶27.]    The Evridges acknowledge this adverse determination, and they have not sought appellate review of the court's ruling.  They do, however, argue that the court should have allowed evidence of their intensified grazing program to essentially rebut Knecht's defense that the large number of cattle he had on the ranch in 2016 was beyond his control and did not violate the overgrazing proscription in the Agricultural Lease.  With their intensified grazing evidence, the Evridges argue, they could have demonstrated that the ranch could responsibly sustain the large number of cattle only if Knecht had implemented an intensified grazing program.

[¶28.]    The circuit court, however, did not categorically exclude all evidence of the Evridges' intensified grazing program.  In fact, the court allowed the Evridges to discuss their intensified grazing efforts as the key to optimal utilization of grassland.  Although the court excluded some of the opinions of the Evridges' range management expert, the same essential information was admitted without objection during the Evridges' testimony.

[¶29.]    In its effort to regulate the admission of the intensified grazing program evidence, the circuit court allowed the Evridges to refute Knecht's defense without suggesting that Knecht was somehow contractually liable for not adopting

---

7.    The Agricultural Lease states that "Lessors may move cattle or direct Lessee to move cattle on the home place," but the Supplemental Lease states that "[a]ll necessary movement of cattle through the pasture system shall be managed and accomplished by Lessee."

their program.  This careful approach to the intensified grazing evidence struck a permissible balance in the context of the case, and we conclude that the court acted within its discretion.

### *Denial of the Evridges' Proposed Jury Instruction*

[¶30.]        "A trial court has discretion in the wording and arrangement of its jury instructions, and therefore we generally review a trial court's decision to grant or deny a particular instruction under the abuse of discretion standard." *Bertelsen v. Allstate Ins., Co.*, 2011 S.D. 13, ¶ 26, 796 N.W.2d 685, 695 (quoting *Wangsness v. Builders Cashway, Inc.*, 2010 S.D. 14, ¶ 10, 779 N.W.2d 136, 140).

[¶31.]        Here, the Evridges requested the following instruction:

Previously, the Court entered Orders with which the parties are bound and the jury is to follow:

(1) The Agricultural Lease is a valid and binding contract.

(2) The Supplemental Lease is a valid and voidable contract.  Knecht may terminate this lease.

(3) Knecht was not obligated to implement a grazing plan on the ranch.

(4) Evridges are entitled to shared use of Section 36 from the first part of October to the first part of December.

(5) Evridges may keep the small number of horses and bulls on the ranch that were on the ranch when Knecht took possession.

(6) Knecht may not recover money for the failure of the Grand River Cooperative Grazing Association to transfer the permit for 2016.  Knecht's remedy is contained in the contract and he may terminate the Supplemental Lease.  Knecht exercised his remedy and terminated the Supplemental Lease for 2016.

[¶32.] Because the proposed instruction is based on portions[8] of the circuit court's earlier declaratory orders, the Evridges claim it represents an essential part of the law for the jury to apply. However, our review of the record convinces us that the circuit court adequately instructed the jury on the law that applied to the competing contract claims it considered, and the court acted within its discretion in refusing the proposed instruction. In this regard, the proposed instruction did not address the legal principles necessary to determine the damages claims and, at most, offered a recapitulation of the earlier declaratory judgment litigation. However, the presentation of evidence before the jury adequately contemplated the limits of the parties' rights as determined earlier, and in our view, did not stray from these earlier orders. The two examples cited by the Evridges illustrate this point.

[¶33.] In the first example, the Evridges argue that the failure to give its proposed instruction meant that the jury was unaware that the two leases allowed for the parties' joint use of Section 36 of the Evridge ranch. The record, however, establishes otherwise. The leases, themselves, were admitted as exhibits at the jury trial, and several witnesses testified about the shared-use provision relating to Section 36 of the ranch.

[¶34.] In the second example, the Evridges claim the jury could not have awarded damages to Knecht because they had fewer horses and bulls on the leased ranch than they were permitted under the declaratory order. *See supra* ¶ 30

---

8. The Evridges indicate that the instruction is based on what they consider to be the applicable provisions of the circuit court's declaratory orders.

(allowing the Evridges to "keep the small number of horses and bulls on the ranch that were [there] when Knecht took possession"). Neither lease, in fact, contains text allowing this specific right, but even if we assume that the order was correct, the testimony during the trial adequately apprised the jury of this previous ruling. Missing from the Evridges' analysis is a recognition that the jury could have found them liable for breaching other provisions of the lease unrelated to keeping their horses and bulls on the ranch.

[¶35.] For instance, the jury could have found liability based upon evidence that the Evridges used up to 40% of the leased ranch for their own use and did not restrict their use to Section 36. Indeed, there was evidence that the Evridges exceeded any reserved authority to use the ranch and also cut fences to allow their cattle to graze outside of Section 36. However, the verdict form does not require the jury to specifically note the theory of liability it accepted, which limits our ability to conduct further review. *See State Farm Mut. Auto. Ins. Co. v. Miranda*, 2019 S.D. 47, ¶ 12, 932 N.W.2d 570, 574 (holding that the jury's general verdict restricts further inquiry); *Reede Constr., Inc. v. S.D. Dep't of Transp.*, 2017 S.D. 63, ¶ 14, 903 N.W.2d 740, 745.

[¶36.] Under the circumstances, we cannot accept the Evridges' argument that the court's unwillingness to give the proposed instruction necessarily means the court did not consider itself bound by the earlier declaratory orders. In our view, the trial transcript supports the opposite view. The court was keenly aware of the earlier declaratory orders and faithfully applied them in its evidentiary rulings during the jury trial.

*Sufficiency of the Evidence*

[¶37.]        When reviewing the sufficiency of the evidence presented to the jury, our well-established standard instructs that we "will not disturb the trial court's decision [to grant a new trial] absent a clear showing of abuse of discretion." *Biegler v. Am. Family Mut. Ins. Co.*, 2001 S.D. 13, ¶ 17, 621 N.W.2d 592, 598. Additionally, we have previously stated that:

> When considering whether a jury verdict is sustained by the evidence "[w]e are not to speculate or query how we would have viewed the evidence and testimony, or what verdict we would have rendered had we been the jury. The real and only question to be solved and answered is, [whether] there [is] any legal evidence upon which the verdict can properly be based, and [whether] the conclusions embraced in and covered by [the verdict were] fairly reached[.]"

*Roth v. Farner-Bocken Co.*, 2003 S.D. 80, ¶ 25, 667 N.W.2d 651, 661 (emphasis omitted) (quoting *Biegler*, 2001 S.D. 13, ¶ 32, 621 N.W.2d at 602). The circuit court may grant a new trial if it finds "[e]xcessive or inadequate damages appearing to have been given under the influence of passion or prejudice [or] [i]nsufficien[t] evidence to justify the verdict." SDCL 15-6-59(a)(5)-(6).

[¶38.]        The Evridges' argument for a new trial implicates the sufficiency of the evidence and again advances on the premise that the jury could not have awarded Knecht damages for the years 2014 and 2015. They cite the circuit court's prior order recognizing that they could share Section 36 and the Evridges could keep the same number of horses and bulls they had on the ranch when they entered into the lease. As we indicated above, however, this premise is not sound because it views the evidence adduced at trial too parochially and overlooks additional testimony that the Evridges' use of the ranch exceeded the limits allowed under the

leases along with specific evidence that they cut fences to utilize other pastures that had been leased exclusively to Knecht. Within its role as the factfinder, the jury could have credited this evidence and testimony, which would be sufficient to support the verdict.

[¶39.] The Evridges further allege the verdict is not supported because the "undisputed" evidence of overgrazing by Knecht in 2016 failed to yield an award of damages for overgrazing. The evidence of overgrazing was, most assuredly, disputed. Indeed, testimony from Knecht and other witnesses directly contradicted the Evridges' evidence of overgrazing. The jury's verdict reflects its unique ability to weigh the strength of the conflicting evidence and assess the witnesses' credibility. Its decision not to award the Evridges damages for overgrazing is supported by sufficient evidence, and the circuit court did not abuse its discretion when it denied their motion for a new trial.

### *Appellate Jurisdiction for Knecht's Claims Involving the Supplemental Lease*

[¶40.] Before considering the merits of Knecht's arguments in his separate appeal, we must undertake a threshold inquiry to determine whether we have jurisdiction to consider his arguments regarding the Supplemental Lease. The Evridges claim that the circuit court's declaratory orders regarding the Supplemental Lease were final orders that obligated Knecht to seek appellate review within thirty days following notice of their entry. *See* SDCL 15-26A-6 (providing, in part, that "[a]n appeal from a judgment or order must be taken within thirty days after the judgment or order shall be signed, attested, filed and written

-17-

notice of [its] entry thereof shall have been given to the adverse party . . .”). We disagree and conclude that we have appellate jurisdiction.

[¶41.] The Evridges' claim that the declaratory orders constituted a final judgment is not supported by the record or their principal authority. Although the court, with the agreement of the parties, bifurcated determination of the multiple claims, it did not create two individual cases. Indeed, the circuit court's initial determinations concerning the parties' rights under the two leases figured prominently in resolving their remaining breach of contract theories in the subsequent jury trial. For this reason, the declaratory orders were not final, and the Evridges' reliance upon our decision in *Midcom, Inc. v. Oehlerking* is misplaced. 2006 S.D. 87, 722 N.W.2d 722.

[¶42.] In *Midcom*, we concluded that finality is a qualitative determination based upon the "substance of the decision rather than its form or name." *Id.* ¶ 11 (quoting *Griffin*, 88 S.D. at 359, 220 N.W.2d at 2). We found persuasive the United States Supreme Court's perception of a final judgment as "one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Id.* ¶ 15 (quoting *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 199, 108 S. Ct. 1717, 1720, 100 L. Ed. 2d 178 (1988)). Our holding in *Midcom* applied these principles and held that the resolution of all substantive causes of action on the merits renders a decision final without regard to a successive determination of a collateral claim for attorney fees. *Id.* ¶ 20.

[¶43.] Here, the parties contemplated the jury trial would be an extension of the declaratory phase of the case by allowing the jury to address, among other

things, damages prompted by the circuit court's determinations concerning the leases. Therefore, the claims remaining after the circuit court issued its declaratory orders were unquestionably substantive—not collateral.

[¶44.] Further, the circuit court's declaratory judgment orders were not appropriately certified as final under SDCL 15-6-54(b). Although, as indicated above, the circuit court entered a post-notice-of-appeal order that stated the declaratory judgment orders were final, the court did not make any of the requisite findings for Rule 54(b) certification. We have held, in this regard, that "[a] Rule 54(b) certification is not a procedural formality." *Davis v. Farmland Mut. Ins. Co.*, 2003 S.D. 111, ¶ 13, 699 N.W.2d 713, 718. It is, instead, "'an essential prerequisite' that has 'jurisdictional significance.'" *Id.* (citation omitted). In *Davis*, we reaffirmed our decision in *Ochs v. Northwestern National Life Insurance Company*, 254 N.W.2d 163, 168-69 (S.D. 1977), which recognized the exceptional nature of Rule 54(b) appeals. *Id.* We also emphasized the requirement that a trial court certifying an order as final "must include a 'reasoned statement in support of its determination that there is no just reason for delay and its express direction for the entry of a final judgment as to one or more but fewer than all of the claims or parties where the justification for the certificate is not apparent.'" *Id.* (quoting *Ochs*, 254 N.W.2d at 170).

[¶45.] The post-appeal order here stated merely that the declaratory judgment orders "are final, pursuant to SDCL § 15-5-54(b)." This bare statement does not satisfy the standard for certification as a final order. *See id.* ("Mere recitation of the statutory language is insufficient.").

[¶46.] For these reasons, we correctly dismissed Knecht's earlier appeal because we lacked appellate jurisdiction. Knecht's current appeal, however, involves a final judgment and was perfected by a timely notice of appeal within thirty days of the notice of entry of judgment. We conclude, therefore, that we have appellate jurisdiction to consider the issues Knecht has raised.

***Validity and Enforceability of the Supplemental Lease***

[¶47.] A lawful purpose or object is essential to a contract's validity. "Where a contract has but a single object and such object is unlawful in whole or in part . . . the entire contract is void." SDCL 53-5-3. "A void contract is invalid or unlawful from its inception. It is a mere nullity, and incapable of confirmation or ratification." *Nature's 10 Jewelers v. Gunderson*, 2002 S.D. 80, ¶ 12, 648 N.W.2d 804, 807 (citation omitted).[9] "[C]ontract interpretation is a legal question we review de novo." *Schaefer v. Sioux Spine & Sport, Prof. LLC*, 2018 S.D. 5, ¶ 9, 906 N.W.2d 427, 431 (quoting *Gores v. Miller*, 2016 S.D. 9, ¶ 8, 875 N.W.2d 34, 37).

[¶48.] Knecht incorrectly argues that the Supplemental Lease was void because it violated the rules of the Grazing Association, which he claims are required by regulations promulgated by the United States Department of Agriculture. The connection between the Evridges' violation and the specific requirements of federal law seems indirect, if not attenuated.[10] However, we need

---

9. Unlike a void contract, a voidable contract is one that suffers from an infirmity that can be a basis for declaring it void at the election of one of the parties. *See Nature's 10 Jewelers*, 2002 S.D. 80, ¶ 12, 648 N.W.2d at 807.

10. Federal regulations require the United States Forest Service to "develop, administer and protect the range resources and permit and regulate the

(continued . . .)

not pursue it further because Knecht's voidness argument rests upon the unsound premise that the Supplemental Lease expressly provided for the surreptitious transfer of the grazing permit to Knecht. The text of the Supplemental Lease does not support such an interpretation.

[¶49.] Instead, the plain language of the Supplemental Lease describes the object of the agreement as a lease of the Evridges' 3,070-acre ranch to Knecht. It does not impose an obligation upon the Evridges to obtain a grazing permit from the Grazing Association or to provide additional land controlled by the Grazing Association. The Supplemental Lease states that the parties "jointly acknowledge and agree that this lease is for privately-owned property and that the grazing permit on the National Grasslands associated with this base property is waived to the Grazing Association."[11] The fact that the parties may have hoped to successfully obtain the transfer of the grazing permit to Knecht did not contractually obligate the Evridges to assure that result. Therefore, the object of the Supplemental Lease, as expressed by its text, was the lease of the ranch, which is not unlawful and does not violate public policy as expressed in the Department of Agriculture's regulations.

_____

(. . . continued)

grazing use . . . on . . . lands under Forest Service control." 36 C.F.R. § 222.1. The Forest Service is, in turn, "authorized to recognize, cooperate with, and assist local livestock associations in the management of the livestock and range resources . . . ." 36 C.F.R. § 222.7. Here, the Forest Service and the Grazing Association entered into a Grazing Agreement that contractually obligates the Grazing Association to develop rules of management, including the rules at issue here, that are submitted to the Forest Service for approval.

11. The Agricultural Lease contains an identical provision.

[¶50.] Of course, the Evridges required the unwieldy arrangement involving two leases for the same ranch in order to deceive the Grazing Association. However, their motives and concealment of the Supplemental Lease simply mean it was an instrument of their subterfuge not intrinsically unlawful. For this reason, the circuit court did not err by declaring the Supplemental Lease enforceable and subject to Knecht's right to terminate in the event the grazing permit was not issued. The court also did not err, therefore, when it ordered the clerk of courts to release the disputed rent to the Evridges and directed Knecht to pay the balance of the rent due under the Supplemental Lease up to the time when he terminated the lease.

### *Summary Judgment for Knecht's Fraud and Deceit Claims*

[¶51.] "We review a circuit court's entry of summary judgment under the de novo standard of review." *Zochert v. Prot. Life Ins. Co.*, 2018 S.D. 84, ¶ 18, 921 N.W.2d 479, 486 (quoting *Harvieux v. Progressive N. Ins. Co.*, 2018 S.D. 52, ¶ 9, 915 N.W.2d 697, 700). When considering the circuit court's summary judgment decision, we are guided by the following well-settled principles:

> Summary judgment is authorized if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. We will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided. All reasonable inferences drawn from the facts must be viewed in favor of the non-moving party. The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law. Summary judgment will be affirmed if there exists any basis which would support the circuit court's ruling.

*Dakota, Minn. & E. R.R. v. Acuity*, 2009 S.D. 69, ¶ 14, 771 N.W.2d 628-29

(emphasis omitted) (quoting *Schwaiger v. Avera Queen of Peace Health Servs.*, 2006

S.D. 44, ¶ 7, 714 N.W.2d 874, 877).

[¶52.]     Discerning the precise nature of Knecht's fraud and deceit claims

begins with a close examination of count three of his amended complaint.  Count

three relates to the negligent misrepresentation claim that Knecht later voluntarily

dismissed, but it contains the predicate factual allegations to which his separate

deceit and fraud claims generally refer.  Among the allegations contained in count

three are the following claims:

1.  The Evridges misrepresented that Knecht was overgrazing
    the ranch;

2.  The Evridges falsely represented the only way they could
    lease their ranch was by having two leases: (i) one lease for
    the Evridge ranch, and (ii) a second Supplemental Lease for
    the Evridges' summer grazing permits on the Grand River
    Grazing Association land;

3.  The Evridges failed to disclose that Grazing Association rules
    require them to furnish all leases to the Association and
    prohibit the Evridges from charging for the use of their
    grazing rights on the national grassland without approval;
    and

4.  The Evridges represented they would comply with the shared
    use provisions contained in the leases.

[¶53.]     Turning first to the claim that the Evridges' misrepresented the

necessity of two separate leases, we view this as an argument that the Evridges

fraudulently induced Knecht to enter into the agreements.  The circuit court

granted the Evridges' motion for summary judgment after concluding they had not

acted wrongfully when they represented the need for two leases.  The court

determined as a matter of law that Knecht was not deceived and, in any event, had elected his sole remedy when he terminated the Supplemental Lease in 2016. We disagree.

[¶54.] The tort of deceit includes "[t]he suggestion, as a fact, of that which is not true, by one who does not believe it to be true[,]" made "with intent to induce him to alter his position to his injury or risk." SDCL 20-10-2(1); SDCL 20-10-1; *see also Rist v. Karlen*, 90 S.D. 426, 429 n.1, 241 N.W.2d 717, 719 n.1 (1976) (describing deceit as a "species of fraud"). We have recognized that "[c]laims of fraudulent inducement to enter a contract can arise under either tort or contract law." *Stabler*, 2015 S.D. 44, ¶ 12, 865 N.W.2d at 474. In *Stabler*, we distilled essential principles from our decisional law and leading secondary authorities and held:

> [W]hen a plaintiff is defrauded, he may bring a tort action or contract action based on the same facts. But when the remedies result in double recovery, he must elect the remedy. "He may affirm the contract and bring a tort action for deceit [seeking monetary damages], or he may repudiate the contract and bring a contract action for rescission or revision." This election of remedies rule does not prevent plaintiffs from pursuing "alternative remedies so long as no double recovery is awarded."

*Id.* ¶ 13 (internal citations omitted).

[¶55.] Here, although Knecht initially asserted that the Supplemental Lease is void, he has not alternatively pursued a contract claim for the Supplemental Lease. Instead, he has, by all parties' accounts, lawfully terminated the Supplemental Lease after 2015, the second year of its three-year term. In so doing, Knecht effectively affirmed the Supplemental Lease for the years 2014 and 2015, and then elected to pursue only a tort claim of fraudulent inducement for damages relating to 2016, which would have been the third year of the Supplemental Lease.

[¶56.] The circuit court's view that Knecht was solely limited to the remedy of terminating the contract, which it believed to be authorized under the terms of the Supplemental Lease, is too restrictive and overlooks Knecht's theory of fraud in the inducement. Further, this conclusion ignores that the Evridges were obligated to prevent their partial statements from being misleading. This is the rule set out in section 551(2)(b) of the Restatement (Second) of Torts, which we previously applied in *Railsback v. Mid-Century Ins. Co.*, 2004 S.D. 64, ¶ 13, 680 N.W.2d 652, 655-56, to hold that a party in an arms-length transaction who makes partial or ambiguous statements of fact has a duty to exercise reasonable care to prevent them from being misleading.

[¶57.] An excerpt of Gayle Evridge's testimony at the court trial illustrates the suitability of this question for a jury determination:

> **Q.** And in your testimony, you admitted that you did not turn in the second lease; right?
>
> **A.** That's correct.
>
> **Q.** Why did you not turn in the second lease?
>
> **A.** I was hoping you were going to get to that question because I would like to answer that. This is a bad reflection on me . . . I have never—my wife and I have never had a lease with two contracts out of over 100. Why this one? There's a discrepancy here. We have two—we had over 100 leases because we had control. As it states in the rules that you were citing one by one, we follow them, we have to follow them. It's out of our control. We are leasing according to their terms and their rules, not ours. Now, [the Grazing Association] . . . approves 25 percent of market value for a lease. I don't know about you or anybody in here that can go very long on 25 percent of their assets. All right? People can't do that. It is customary that there is two leases. One that's presented, one that's kept secret. No different than I told Mike. I said, "Mike, I'm sorry. It's got to be by the acre and it's got to have—there's got to be two leases, and it's got to be hushed up, it's got to be quiet, it's got to be a secret." Is

> this my wishes? No. I am extremely uncomfortable with this. However, to acquire 50 percent of market value, that second lease has to be there.

[¶58.] As a result, the court's analysis did not account for notable questions of disputed material fact, including the Evridges' specific representations about the need for two leases, their intent when communicating with Knecht about the need for two leases, and the extent to which Knecht may have relied or changed his position in reliance of the Evridges' representations. Therefore, the circuit court erred in granting summary judgment on Knecht's claim of deceit under this theory. *See Poeppel v. Lester*, 2013 S.D. 17, ¶ 21, 827 N.W.2d 580, 585 (holding that a party can litigate disputed factual issues in a claim for fraudulent inducement even where the provisions of the contract are contrary to the alleged oral misrepresentations).

[¶59.] Finally, Knecht argues that his fraud and deceit claims include other constituent allegations, including the assertion that the Evridges acted fraudulently by promising to abide by the lease terms and allow him the use and enjoyment of the ranch for which he had bargained. Knecht also alleges that the Evridges acted fraudulently when they accused him of overgrazing or mismanaging the ranch. To the extent that the circuit court's summary judgment decision resolves these claims in favor of the Evridges, we agree.

[¶60.] We have recognized what is commonly known as the independent tort doctrine, which contemplates concurrent, or nearly concurrent, tort and contractual liability, but only in limited instances where a tort duty exists independent of the parties' contractual obligations. In this regard, we have held that "[t]ort liability requires 'a breach of a legal duty independent of contract' . . . [that] arise[s] 'from

extraneous circumstances, not constituting elements of the contract.'" *Schipporeit v. Khan*, 2009 S.D. 96, ¶ 7, 775 N.W.2d 503, 505 (citations omitted).[12]

[¶61.] Simply put, these particular claims do not establish tort duties separate from the lease agreements. They appear, instead, to implicate only duties contemplated by the leases. These claims are not, therefore, "extraneous to the contract" and not actionable as separate torts. *See id.* ¶ 15 (determining alleged breach was not "extraneous to the contract").

## Conclusion

[¶62.] The circuit court's evidentiary rulings were within its discretion, as were its instructions to the jury. The circuit court did not abuse its discretion by denying the Evridges' motion for a new trial because the jury's verdict is supported by sufficient evidence. Appellate jurisdiction exists to review Knecht's claims, given the fact the circuit court's declaratory orders were not final. The circuit court correctly determined that the Supplemental Lease was not void. However, the court erred when it granted the Evridges' motion for summary judgment on Knecht's claim that the Evridges fraudulently induced him to enter into the Supplemental Lease. We therefore reverse this decision and remand the case for a new trial on Knecht's deceit claim consistent with this opinion. We affirm all other issues.

---

12. Fraud in the inducement, as discussed above, is also a claim that arises independent of contract terms. *See Ducheneaux v. Miller*, 488 N.W.2d 902, 914-15 (S.D. 1992) (holding deceit intended to induce another into entering into an agreement was "independent of the breach of contract . . .").

[¶63.]        GILBERTSON, Chief Justice, and KERN and JENSEN, Justices, and

SEVERSON, Retired Justice, concur.