#30728-aff in pt & rev in pt-PJD
**2026 S.D. 5**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

KAISER TRUCKING, INC. and
DAVID SIMONS,                                          Plaintiffs and Appellants,

v.

LIBERTY MUTUAL FIRE
INSURANCE COMPANY,                          Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JOSHUA HENDRICKSON
Judge

* * * *

JARED D. NOONEY of
Nooney & Solay, LLP
Rapid City, South Dakota                    Attorneys for plaintiffs and
                                                            appellants.


JACK H. HIEB
ZACHARY W. PETERSON of
Richardson, Wyly, Wise
   Sauck & Hieb, LLP
Aberdeen, South Dakota                      Attorneys for defendant and
                                                            appellee.

* * * *

ARGUED
APRIL 30, 2025
OPINION FILED **02/04/26**

#30728

DEVANEY, Justice

[¶1.]     This is the second appeal in the legal dispute between the plaintiffs, Kaiser Trucking, Inc. and David Simons, and the defendant, Liberty Mutual Fire Insurance Company. Simons is a truck driver who worked as an agent of the trucking company. In 2015, he was involved in a collision with a vehicle driven by Bianca Spotted Thunder and owned by her father, Charles Spotted Thunder.[1] The Spotted Thunders are insureds under an automobile policy issued by Liberty Mutual. After Kaiser Trucking obtained a default judgment against Bianca that remained unsatisfied, it sued Liberty Mutual seeking recovery under the insureds' policy. In the first appeal, Kaiser Trucking challenged the circuit court's dismissal of the complaint for failure to state a claim, and this Court reversed.

[¶2.]     On remand, Liberty Mutual moved for summary judgment, contending it was not responsible for coverage because of the failure to comply with conditions in the policy requiring cooperation with the investigation of the liability claim and notification of the lawsuit against Bianca. The circuit court granted the motion for summary judgment. Kaiser Trucking appeals, claiming there was no obligation to comply with conditions precedent contained in the insurance policy. Kaiser Trucking alternatively claims that there are disputed facts that should have precluded summary judgment as to whether the conditions precedent had been met. We affirm in part and reverse in part.

---

1.     For convenience, the plaintiffs herein are jointly referred to using the singular term "Kaiser Trucking," unless the context requires otherwise. The Spotted Thunders are identified by their first names to avoid confusion.

-1-

## Factual and Procedural Background

[¶3.]     On September 8, 2015, Bianca Spotted Thunder was involved in a vehicle accident on a highway in Oglala Lakota County, South Dakota. According to the law enforcement report, Bianca crossed the center line of the highway and collided head-on with David Simons, who was driving a semi-truck and trailer. Bianca made statements at the scene suggesting the accident may have been an attempted suicide on her part.

[¶4.]     The vehicle Bianca was driving, with permission, was owned and insured by her father, Charles, under a policy issued by Liberty Mutual. Charles notified Liberty Mutual of the accident the same day it occurred. Liberty Mutual paid Charles and his lienholder under the collision coverage of the policy for the damage to his vehicle. Liberty Mutual attempted to investigate the circumstances surrounding the accident to assess the availability of liability coverage under the policy and to determine whether the accident was the result of an intentional act by Bianca. It sought the cooperation of Charles and Bianca, including a statement from Bianca about the accident, but these attempts were unsuccessful. At some point, Bianca and Charles moved to California, where Liberty Mutual's investigator eventually spoke to Charles and delivered a reservation of rights letter. Charles responded that he did not wish to be bothered. Liberty Mutual received no response from Bianca after sending her a certified letter requesting cooperation.

[¶5.]     Simons owned the semi-truck he was driving and was an agent of Kaiser Trucking, the owner of the trailer. Kaiser Trucking's insurer, Great Western Casualty Company (GWCC), reached out to Liberty Mutual seeking recovery for the

amounts GWCC had paid on behalf of or directly to Simons and Kaiser Trucking for their damages and for Simons' medical expenses. In a letter dated April 8, 2016, Liberty Mutual told GWCC that it was denying coverage based on the lack of cooperation on the part of its insureds, Charles and Bianca. The letter explained that Liberty Mutual had made numerous unsuccessful attempts to reach both of them in order to determine if the accident was a result of an intentional act.[2] After further communications, Liberty Mutual again notified GWCC via a letter dated May 17, 2016, that it was denying coverage based on provisions in its insurance policy requiring notice of the accident and cooperation in the investigation, settlement or defense of any claim or suit. After GWCC reached out again to Liberty Mutual in December 2016, the two insurers exchanged emails in January 2017 in which GWCC sought settlement in lieu of commencing litigation. Liberty Mutual advised GWCC that it stood by its decision to deny coverage due to an exclusion in the policy for intentional acts. In an email dated January 26, 2017, Liberty Mutual's claims specialist told GWCC that "[i]f it is decided that suit will be filed, please contact me."

[¶6.] Later in 2017, Kaiser Trucking commenced a negligence lawsuit (Lawsuit) against Bianca by service of a summons and complaint upon the South Dakota Secretary of State on September 25, 2017. *See* SDCL 15-7-6 and 15-7-7

---

2.  The summary judgment record includes internal claim notes entered by Liberty Mutual's claims specialists. These notes refer to the law enforcement accident report containing Bianca's statements that suggest she may have intentionally caused the accident to hurt herself. The notes also include references to Liberty Mutual's intent to obtain a statement from Simons as to his rendition of how the accident occurred.

(permitting substituted service of process).[3] On December 6, 2019, Kaiser Trucking obtained a default judgment against Bianca. The court awarded judgment in the amount of $36,977.06 to Kaiser Trucking, $146,619.80 to Simons, as well as pre- and post-judgment interest. These judgments remain unsatisfied.

[¶7.] On December 1, 2020, Kaiser Trucking brought the present action against Liberty Mutual. It requested a declaration that Liberty Mutual is liable for the judgments that Kaiser Trucking obtained against Bianca and sought a monetary judgment against Liberty Mutual for the same.[4]

***Motion to dismiss***

[¶8.] Liberty Mutual filed a motion to dismiss for failure to state a claim. Liberty Mutual contended that injured third parties may bring an action against a tortfeasor's insurer for an unsatisfied default judgment only in accordance with the terms of the insurance policy, as provided in SDCL 58-23-1:

> All liability insurance policies issued in this state shall provide in substance that if an execution upon any final judgment in an action brought by the injured or by another person claiming, by, through, or under the injured, is returned unsatisfied, then an action may be maintained by the injured, or by such other person against the insurer *under the terms of the policy* for the

---

3. The record does not indicate that Bianca was ever aware of the lawsuit against her. In an affidavit in support of the default judgment, counsel for Kaiser Trucking noted Bianca's last known addresses in South Dakota and California but acknowledged that correspondence sent to the California address had been "returned to sender."

4. Although this action is captioned in the names of Kaiser Trucking and Simons as plaintiffs, Kaiser Trucking did not dispute Liberty Mutual's statement in its statement of undisputed material facts that it is Kaiser Trucking's insurer, GWCC, that seeks recovery, in the current lawsuit against Liberty Mutual, for the amounts it paid to Kaiser Trucking and Simons.

amount of any judgment recovered in such action, not exceeding the amount of the policy, and every such policy shall be construed to so provide, anything in such policy to the contrary notwithstanding.

(Emphasis added.)

[¶9.]    Charles' liability policy issued by Liberty Mutual contains, in part, the following provisions in Part E entitled "Duties After an Accident or Loss":

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

. . . .

B.    A person seeking any coverage must:

1.    Cooperate with us in the investigation, settlement or defense of any claim or suit. . . .

2.    Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

[¶10.]    In its motion to dismiss, Liberty Mutual asserted that, prior to the present lawsuit, it had never been notified of the Lawsuit against Bianca. It further asserted that Kaiser Trucking's complaint failed to allege facts establishing that Liberty Mutual had notice of the Lawsuit and that Bianca cooperated in the investigation, settlement, or defense of the Lawsuit. Liberty Mutual argued the notice and cooperation terms of Charles' policy were conditions precedent to its obligation to defend and indemnify and, as such, must have been pled in order for Kaiser Trucking to have stated a plausible claim.

[¶11.]    In response, Kaiser Trucking contended that, as a plaintiff in the Lawsuit against Bianca, it had no obligation to notify Liberty Mutual of the Lawsuit. It further argued that the requirements in Part E of the policy cited by

Liberty Mutual were policy exclusions which Liberty Mutual has the burden of proving. After a hearing, the circuit court granted Liberty Mutual's motion to dismiss. The court ruled that "notice of suit against an insured is a prerequisite to a liability insurer's duty to indemnify[.]" The court further determined that, because the amended complaint failed to allege that Liberty Mutual was ever provided notice of the Lawsuit, plaintiffs failed to state a plausible claim for relief.

*Kaiser I*

[¶12.]    Kaiser Trucking appealed the dismissal. *See Kaiser Trucking, Inc. v. Liberty Mut. Fire Ins. Co.*, 2022 S.D. 64, 981 N.W.2d 645 (*Kaiser I*). This Court framed the issue in *Kaiser I* as "whether the circuit court erred in finding that notice to Liberty Mutual of a claim against its insured was a condition precedent under Liberty Mutual's insurance policy that must have been alleged in the complaint in order to state a claim upon which relief could be granted." *Id.* ¶ 12, 981 N.W.2d at 650. We began by discussing the meaning of a condition precedent, or "an act or event that must exist or occur before there is a right to performance under a contract." *Id.* ¶ 15, 981 N.W.2d at 651 (citations omitted). We noted that, generally, an insured must substantially comply with conditions precedent under an insurance policy, "[o]therwise, the insurer does not have to indemnify the insured for damages awarded against him [or her]." *Id.* (second alteration in original) (citing *Terra Indus., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 383 F.3d 754, 759 (8th Cir. 2004)). We contrasted conditions precedent "from exclusions, which carve out some particular events from a coverage that is otherwise general," and observed that "an insured has the burden to prove that

conditions precedent are met, while the insurer has the burden to prove that an exclusion applies." *Id.* (citation modified).

[¶13.] We then analyzed whether conditions precedent must be *pled* for a third-party claimant bringing a direct action to survive a motion to dismiss for failure to state a claim. We acknowledged contrasting schools of thought and ultimately applied a "middle ground approach" that looks to the substantive law providing the basis for the complaint. *Id.* ¶¶ 24, 26–27, 981 N.W.2d at 654–55 (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1303 (4th ed.)). Adopting this approach, we concluded "that a condition precedent need only be pled in a complaint when the performance or occurrence of conditions precedent is an element of the claim." *Id.* ¶ 27, 981 N.W.2d at 655.

[¶14.] With respect to the Liberty Mutual policy at issue, we observed that, "as between Liberty Mutual and Spotted Thunder (insured), [Part E[5]] may be a condition precedent to coverage because it sets forth a requirement for coverage under the Policy, rather than carving out an event from the Policy's general coverage as an exclusion." *Id.* ¶ 28 (citation omitted). However, the Court noted that "Kaiser Trucking is not a party" to Liberty Mutual's insurance contract in this case, but instead, derives its ability to seek recovery under SDCL 58-23-1. Analyzing this statute, we explained that although an injured party may maintain a direct action against the insurer if the injured party "can show the existence of an

---

5. The *Kaiser I* opinion refers to "Section E(A)" of the policy, but that is the provision pertaining to notice of the accident. Liberty Mutual's motion to dismiss was based on the lack of notice of the underlying lawsuit Kaiser Trucking brought against Bianca, which is a requirement in Part E(B).

unsatisfied final judgment[,]" the statute "does not require the injured party to plead any other element or condition precedent to maintain the action. Satisfaction of conditions precedent in the applicable insurance contract is not, therefore, a requirement under SDCL 58-23-1." *Id.* ¶ 28, 981 N.W.2d at 656.

[¶15.] Turning to the complaint, we determined that, consistent with notice pleading requirements, the complaint's averments were "sufficient to allege a claim against Liberty Mutual pursuant to SDCL 58-23-1." *Id.* ¶¶ 29−30, 981 N.W.2d at 656. We held that "Kaiser Trucking was not required to plead satisfaction of conditions precedent in the Policy to sufficiently state a claim . . . and avoid a Rule 12(b)(5) dismissal of its complaint." *Id.* ¶ 31. We reversed and remanded for further proceedings. *Id.* ¶ 1, 981 N.W.2d at 648.

***Proceedings on remand***

[¶16.] On remand, Kaiser Trucking filed an amended complaint and Liberty Mutual filed its answer. Among other defenses, Liberty Mutual alleged an affirmative defense "that a condition precedent under the [p]olicy was not met," citing Part E of the policy. Liberty Mutual specifically alleged that it was not provided notice of the Lawsuit "by plaintiffs, Bianca Spotted Thunder, or any other person, at any point prior to this lawsuit." The parties thereafter engaged in discovery.

[¶17.] Liberty Mutual filed a motion for summary judgment, brief, and statement of undisputed material facts (SUMF). Kaiser Trucking opposed the motion, filing responses to the SUMF and a brief. Kaiser Trucking also sought

leave to conduct additional discovery, which the circuit court granted. The court then held the motion for summary judgment in abeyance.

[¶18.] Following additional discovery, Liberty Mutual filed a renewed motion for summary judgment and brief, to which Kaiser Trucking responded. Liberty Mutual asserted that its motion for summary judgment was based on a narrow, single issue involving the failure of Kaiser Trucking to present any material facts showing that a genuine issue existed regarding whether the requirements of Part E(B) of the policy were met. Specifically, Liberty Mutual alleged there were no facts showing that Bianca, or anyone on her behalf, fully complied with the duty to cooperate with Liberty Mutual in the investigation, settlement or defense of any claim or suit, or with the duty to notify Liberty Mutual of any notices or legal papers received in connection with the accident or loss. Liberty Mutual also alleged that it is undisputed that neither the plaintiffs, nor their insurer, GWCC, notified Liberty Mutual when they brought the Lawsuit against Bianca. Liberty Mutual made it clear that its motion principally relied on the fact that it was not notified of the Lawsuit against Bianca and did not become aware of it until the present case was filed.

[¶19.] Kaiser Trucking, relying on its interpretation of *Kaiser I*, argued that satisfaction of conditions precedent in the policy is not a requirement under SDCL 58-23-1. *See Kaiser I*, 2022 S.D. 64, ¶ 28, 981 N.W.2d at 656. Treating the issue as

a question of law, Kaiser Trucking did not argue that, as a matter of fact, the conditions precedent in Part E(B) of the policy had been met in this case.[6]

[¶20.]    The circuit court held a hearing on the renewed motion. In its oral ruling at the conclusion of the hearing, the court determined there were no disputed material facts regarding noncompliance with the provisions of Part E(B)(1) and (2). The court therefore ruled that because Kaiser Trucking had not presented material facts to show there was compliance with these conditions precedent, Kaiser Trucking could not recover under the terms of the policy. The court granted Liberty Mutual's motion on that basis and entered a written order and a judgment granting summary judgment in favor of Liberty Mutual.

[¶21.]    Kaiser Trucking appeals, asserting that the circuit court erred when it granted Liberty Mutual's motion for summary judgment. We re-state the issues Kaiser Trucking raises on appeal as follows:

> 1.    Whether conditions precedent to coverage apply in the context of a direct action by an injured third party against a tortfeasor's insurer.
>
> 2.    Whether there are disputed material facts precluding a grant of summary judgment.

---

6.    While Kaiser Trucking argued that it was undisputed that Liberty Mutual had notice of the accident, which is an additional condition precedent in Part E(A) of the policy, Liberty Mutual admitted that such notice occurred. Liberty Mutual made it clear that its summary judgment motion was not based on lack of compliance with that sub-part. Instead, the motion was based on the lack of compliance with Part E(B) of the policy.

## Analysis and Decision

### 1. Whether conditions precedent to coverage apply in the context of a direct action by an injured third party against a tortfeasor's insurer.

[¶22.]     The threshold issue presented in this appeal is whether compliance with the provisions of Part E(B) in Liberty Mutual's insurance policy was necessary to trigger coverage. Kaiser Trucking's argument in this regard rests primarily on this Court's statement in *Kaiser I* that "[s]atisfaction of conditions precedent in the applicable insurance contract is not . . . a requirement under SDCL 58-23-1." *Kaiser I*, 2022 S.D. 64, ¶ 28, 981 N.W.2d at 656.[7] However, this sentence must be read in the proper context of the rest of our opinion.

[¶23.]     The issue in *Kaiser I* was whether the complaint was sufficient to survive dismissal under Rule 12(b)(5). The Court's analysis thus centered on what is—and is not—required to be *pled* in a direct action under SDCL 58-23-1. In analyzing that narrow issue, we adopted the view that "when the substantive law does not require satisfaction of conditions precedent as an element . . . , conditions precedent need not be pled." *Id.* ¶ 25, 981 N.W.2d at 655. We then noted Kaiser Trucking's action was commenced pursuant to SDCL 58-23-1, which "does not require the injured party to plead any other element or condition precedent to maintain the action." *Id.* ¶ 28, 981 N.W.2d at 656. The sentence that immediately follows, which Kaiser Trucking improperly reads in isolation, related to this Court's

---

7.     Kaiser Trucking made this same argument to the circuit court, but the circuit court did not expressly rule on this issue. We presume that the court rejected Kaiser Trucking's argument, given its ruling that no genuine issue of material fact regarding compliance with the conditions precedent exists.

observation that satisfaction of conditions precedent is not something *that must be pled* to maintain an action under SDCL 58-23-1, the substantive law permitting direct actions. Contrary to Kaiser Trucking's argument, we did not determine, as a matter of law, that conditions precedent in Part E of the policy are inapplicable in a direct action between an injured third party and a tortfeasor's insured.

[¶24.] In fact, we expressly stated in *Kaiser I* that "during litigation, Liberty Mutual is not limited or prejudiced in its ability to present any alleged conditions precedent to coverage or other *defenses* that may exist under the Policy." *Id.* ¶ 30. We also observed that "Kaiser Trucking ha[d] not specifically argued that [Part E] is not a condition precedent to coverage between Liberty Mutual and Kaiser Trucking," and concluded that "*it is unnecessary to resolve this question* in addressing the motion to dismiss before us on appeal." *Id.* ¶ 28 n.9, 981 N.W.2d at 655 n.9 (emphasis added) (citing a secondary source, 7A Couch on Insurance § 106:27 (3d ed., Westlaw database updated Dec. 2025), addressing the applicability of conditions precedent in compulsory liability insurance policies in direct actions brought by an injured party against an insurer).

[¶25.] That issue, now squarely presented in the current appeal, must be decided as part of this Court's de novo review of the circuit court's entry of summary judgment. *See James v. State Farm Mut. Auto. Ins. Co.*, 2019 S.D. 31, ¶ 6, 929 N.W.2d 541, 543 (applying de novo review when determining whether circuit court correctly applied the law); *Thunderstik Lodge, Inc. v. Reuer*, 2000 S.D. 84, ¶ 5, 613 N.W.2d 44, 46 (noting that contract and statutory interpretation are "questions of law reviewable de novo").

[¶26.]　　　"As a general rule there is no privity between an injured person and the tortfeasor's liability insurer, and the injured person has no right of action at law against the insurer[.]" *Trouten v. Heritage Mut. Ins. Co.*, 2001 S.D. 106, ¶ 11, 632 N.W.2d 856, 858 (alteration in original) (citation omitted).　An exception exists where there is statutory authorization for such an action.　*Id.*　As discussed above, SDCL 58-23-1 provides such authority when the injured party "obtains a [final] judgment against an insured and the judgment remains unsatisfied." *Kaiser I*, 2022 S.D. 64, ¶ 28, 981 N.W.2d at 656.

[¶27.]　　　Generally, in a direct action brought by an injured third party, an insurer may raise any policy defense that the insurer would have had against the insured.　7A Couch on Insurance § 106.5 (3d ed., Westlaw database updated Dec. 2025).　This is due to the nature of a direct action, which has been described as a "substitution of sorts," where the injured party essentially "stands in the shoes of the insured."　7A Couch on Insurance § 106.1 (3d ed., Westlaw database updated Dec. 2025).　Consistent with this concept, we have recognized that, pursuant to the language in SDCL 58-23-1, an injured third party may bring a direct action against an insurer only "under the terms of the policy." *See Klatt v. Cont'l Ins. Co.*, 409 N.W.2d 366, 373 (S.D. 1987); *Railsback v. Mid-Century Ins. Co.*, 2004 S.D. 64, ¶ 18, 680 N.W.2d 652, 657.　We must therefore consider the language in the policy at issue when determining whether a particular affirmative defense may be raised, as "[t]he existence of the rights and obligations of parties to an insurance contract are determined by the language of the contract, which must be construed according to

the plain meaning of its terms." *South Dakota Petrol. Release Comp. Fund v. BP plc*, 2020 S.D. 47, ¶ 22, 948 N.W.2d 45, 53.

[¶28.]  In secondary sources addressing insurance policy clauses requiring the giving of notice of an accident or claim and the forwarding of suit papers to an insurer, it has been noted that "a distinction has been made between policies which expressly make compliance with [such clauses] a condition precedent to the liability of the insurer under the policy, and those which omit such an express statement." C.T. Drechsler, Annotation, *Liability Insurance: Clause With Respect to Notice of Accident or Claim, Etc., or With Respect to Forwarding Suit Papers*, 18 A.L.R.2d 443, § 2(2).  If a policy expressly makes a failure to give notice "a condition precedent to the insurer's liability, no recovery can be had where timely notice has not been given." *Id.*  But without such express provision, it is not clear from the cases and authorities on this topic whether noncompliance with provisions requiring notice and forwarding of lawsuit papers will preclude coverage.  *Id.*

[¶29.]  Here, Part E of Liberty Mutual's policy expressly states that it has "no duty to provide coverage under this policy unless there has been full compliance" with the duties enumerated thereunder.  In *Kaiser I*, we noted that, "[g]enerally, when an insured party confronts a condition precedent, the insured must demonstrate that he or she 'substantially complied with this condition or that noncompliance was excused, waived, or did not prejudice the insurer.'"  2022 S.D. 64, ¶ 15, 981 N.W.2d at 651 (citing *Terra Indus., Inc.*, 383 F.3d at 759).  While we have not previously applied this general rule to a *direct action* brought under SDCL 58-23-1, we have applied it in a context analogous to the direct action brought here.

[¶30.] In *Bruins v. Anderson*, a case involving a garnishment action by a judgment creditor against a tortfeasor's insurer, we interpreted a policy which expressly stated that "[n]o action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of [the] policy[.]" 47 N.W.2d 493, 494 (S.D. 1951). We determined that the insurer has the same defenses against the judgment creditor as it would have against the insured and noted that an insured's noncompliance with conditions precedent may defeat recovery by the judgment creditor "in the absence of waiver or estoppel" on the part of the insurer. *Id.* at 495; *see* 7A Couch on Insurance § 106:19 (3d ed., Westlaw database updated Dec. 2025) (noting that "where the right of the injured person to recover against the insurer is dependent upon the terms and limitations of the policy, a breach of the policy by failing to give notice of the accident, claim, or suit, or to forward papers, will defeat the rights of the injured person against the insurer unless the breach is waived or the insurer is estopped [from] assert[ing] it").[8]

[¶31.] Kaiser Trucking has not asserted that there was a waiver or estoppel by Liberty Mutual here. We therefore conclude, consistent with the language in

---

8.  *See also Jamison v. New Amsterdam Cas. Co.*, 254 S.W.2d 353 (Tenn. Ct. App. 1952) (failure of an insured to give insurer notice of suit to insurer, absent a waiver of such duty, barred recovery by an injured third party); *Courtney v. Stapp*, 100 So. 2d 606 (Miss. 1958) (same); C.T. Drechsler, Annotation, *Liability Insurance: Clause With Respect to Notice of Accident or Claim, Etc., or With Respect to Forwarding Suit Papers*, 18 A.L.R.2d 443, § 37 (1951) (noting multiple decisions following the view that "the rights of the injured person can rise no higher than those of the insured" when determining an insurer may raise the defense of failure to give notice of an accident or claim as required by its policy to defeat an injured person's claim).

SDCL 58-23-1 allowing an action by an injured third party against an insurer to be maintained "under the terms of the policy," that Liberty Mutual may raise noncompliance with cooperation and notice provisions as an affirmative defense in this direct action.

[¶32.] However, Liberty Mutual's ability to raise such a defense in this direct action is precluded with respect to the liability insurance coverage amounts required by South Dakota's compulsory financial responsibility laws. Relevant here, SDCL 32-35-74 states, in part:

> Every motor vehicle liability policy shall be subject to the following provisions which need not be contained therein:
>
> (1) The liability of the insurance carrier with respect to the insurance required by this chapter shall become absolute whenever injury or damage covered by said motor vehicle liability policy occurs; . . . no statement made by the insured or on his behalf and no violation of said policy shall defeat or void said policy[.]

Additionally, under SDCL 32-35-113, "[e]very driver or owner of a motor vehicle shall at all times maintain in force one of the forms of financial responsibility on the motor vehicle[.]" One such form is "an owner's policy of liability insurance as provided in § 32-35-70[.]" SDCL 32-35-113(1). In turn, SDCL 32-35-70 requires such policies to insure the named insured and any person using an insured vehicle with the permission of the named insured

> against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of the vehicle . . . as follows: twenty-five thousand dollars because of bodily injury to or death of one person in any one accident and, subject to the limit for one person, fifty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and twenty-five thousand dollars because of injury to or destruction of property of others in any one accident.

[¶33.]     We have previously noted that these financial responsibility statutes "create a strong public policy favoring monetary protection and compensation for the benefit of those injured through the negligent operation of a vehicle." *Cimarron Ins. Co. v. Croyle,* 479 N.W.2d 881, 883–84 (S.D. 1992) (noting that, prior to the enactment of SDCL 32-35-113 in 1986, South Dakota law "required proof of financial responsibility only after a motorist was involved in an accident or convicted of certain motor vehicle offenses" but now all owners and operators of motor vehicles must maintain such proof).[9]  In *Cimarron*, an insurer brought an action seeking a declaration as to whether it must provide liability coverage for a claim filed by an insured's family member who was injured during a collision when riding as a passenger in an insured vehicle.  The insured's son was driving the vehicle, and his sister was the passenger who sustained injuries.  She filed a claim against Cimarron, alleging that her brother was negligent.  We concluded that a household exclusion in Cimarron's policy precluding coverage for bodily injury to an insured or any family member was void because it violated public policy, as established by the financial responsibility laws, but only to the extent of the minimum coverage amounts required in SDCL 32-35-70.[10]  *Id.* at 884−85.  However,

---

9.     In 1989, the South Dakota Legislature amended SDCL 32-35-70 to include provisions stating that "if a policy complies with the filing and form requirements of Title 58 and has been approved by the division of insurance, the driver and owner has complied with this chapter[;]" and that "[p]olicies issued after January 1, 1987, and owners who have purchased such policies are in compliance with this chapter."  1989 S.D. Sess. Laws ch. 279, § 1.

10.    After *Cimarron* was decided, the Legislature amended SDCL 32-35-70 to include a provision allowing an insurance policy "to exclude or limit coverage

(continued . . .)

we further determined that, pursuant to SDCL 32-35-75, any "*excess* coverage is not subject to the provisions of this state's statutes on financial responsibility of motorists[.]"[11]  *Id.* at 885 (emphasis added).

[¶34.]     Although we have not previously addressed the question whether an insured's failure to comply with *conditions precedent* can be raised by an insurer as an affirmative defense in a direct action to preclude statutorily required liability coverage, other courts have.  The Iowa Supreme Court considered this issue in a case involving the same scenario presented here, i.e., a direct action against a motor vehicle liability insurer by a third party who had obtained a default judgment for property damage caused by the owner and driver of a vehicle insured by the insurer.  *Dave Ostrem Imports, Inc. v. Globe Am. Cas./GRE Ins. Grp.*, 586 N.W.2d 366 (Iowa 1998).  The insurance policy, which was certified as proof of the driver's financial

---

(. . . continued)
    pursuant to SDCL 58-11-9.3, or for a relative residing in the named insured's household[,]" and still be compliant with chapter 32-35.  *See* 1992 S.D. Sess. Laws ch. 233, § 1.  SDCL 58-11-9.3 allows an insurer to exclude, in the policy agreement, a named individual from coverage, and to reduce the limits of liability coverage via a restrictive endorsement "when a vehicle is operated by a named person or class of persons."  But "if the policy does provide liability coverage to a person or persons named in a restrictive endorsement, the liability coverage may not be less than the minimum prescribed by chapter 32-35."  SDCL 58-11-9.3.

11.    SDCL 32-35-75 states, in its entirety:

    Any policy which grants the coverage required for a motor vehicle liability policy may also grant any lawful coverage in addition to the coverage specified for a motor vehicle liability policy and such excess or additional coverage shall not be subject to the provisions of this chapter.  With respect to a policy which grants such excess or additional coverage the term, motor vehicle liability policy, shall apply only to that part of the coverage which is required by § 32-35-70 or 32-35-71.

responsibility required by Iowa law, contained a provision requiring the insured to notify the insurer "of any accident triggering coverage" and further required the insured to forward "any [lawsuit] papers that the insured might receive." *Id.* at 367. Under the terms of the policy, "a failure to do this would be a basis for denying coverage." *Id.* The insurer did not receive notice of the third party's lawsuit against the driver and thus had no opportunity to defend against the action. As a result, a default judgment was entered and it remained unsatisfied. In the direct action, the insurer asserted, as an affirmative defense, the failure of the insured to give notice to the insurer of the underlying suit. *Id.* The district court concluded that under Iowa's financial responsibility laws, policy provisions could not defeat coverage, and granted summary judgment to the third-party plaintiff. *Id.*

[¶35.] On appeal, the Iowa Supreme Court affirmed, citing Iowa Code § 321A.21(6)(a), which mirrors the language in SDCL 32-35-74 and states that "[t]he liability of the insurance carrier with respect to the insurance required by [the financial responsibility laws] shall become absolute whenever injury or damage covered by . . . [the] liability policy occurs[.]" *Id.* The court noted that the term "absolute," when used in the context of financial responsibility laws, "means that there shall be no defenses to liability of the insurer based upon any statement made by, or on behalf of, the insured or upon exclusions, conditions, terms, or language contained in the policy." *Id.* (citing 7A Couch on Insurance § 104:45 (3d ed. Westlaw database updated Dec. 2025)). The court reasoned that the express purpose of such statutes is "to preclude a lessening of the protection to the motoring public that financial responsibility laws are intended to provide." *Id.* at 368.

[¶36.]     We likewise conclude that the express language in SDCL 32-35-74—which establishes absolute liability for the injury or damage covered by Liberty Mutual's policy with respect to the liability coverage required by SDCL chapter 32-35—precludes the affirmative defense regarding the failure of its insureds to cooperate in the investigation or to provide notice of the underlying lawsuit. Therefore, Liberty Mutual's asserted affirmative defenses are unavailable, as a matter of law, with respect to the liability coverage provided in its policy for the amounts mandated by SDCL 32-35-70.  However, as we noted in *Cimarron* after similarly determining that a policy exclusion is void with respect to the mandatory minimum liability coverage required by statute, any *excess* coverage provided in Liberty Mutual's motor vehicle liability policy is not subject to the provisions in SDCL chapter 32-35.  *See Cimarron*, 479 N.W.2d at 885 (citing the express terms of SDCL 32-35-75).  We therefore conclude that Liberty Mutual may properly assert noncompliance with conditions precedent in the policy as an affirmative defense precluding liability coverage in *excess* of the compulsory insurance required by statute.

### 2. *Whether there are disputed material facts precluding summary judgment in favor of Liberty Mutual.*

[¶37.]     We must now determine whether the circuit court erred in granting summary judgment as to the asserted failure to comply with such conditions precedent.  "We review a circuit court's entry of summary judgment under the de novo standard of review." *Knecht v. Evridge*, 2020 S.D. 9, ¶ 51, 940 N.W.2d 318, 332 (citation omitted).  Moreover, well-settled principles guide our review of the court's decision:

> Summary judgment is authorized if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. We will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided. All reasonable inferences drawn from the facts must be viewed in favor of the non-moving party. The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law. Summary judgment will be affirmed if there exists any basis which would support the circuit court's ruling.

*Id.* ¶ 51, 940 N.W.2d at 333 (quoting *Dakota, Minn. & E. R.R. v. Acuity*, 2009 S.D. 69, ¶ 14, 771 N.W.2d 623, 628–29).

[¶38.] In support of its summary judgment motion, Liberty Mutual submitted its statement of undisputed material facts, as required by SDCL 15-6-56(c). Because Liberty Mutual made it clear below and on appeal that its summary judgment motion was primarily based on its assertion that it was not notified of the Lawsuit against Bianca, we likewise focus on that claim when analyzing this issue. In support of its claim that Kaiser Trucking had not complied with the notice requirement in Part E(B)(2) of the policy, Liberty Mutual alleged, in SUMF No. 10, that "[n]either plaintiffs nor GWCC notified Liberty Mutual when plaintiffs sued [Bianca]." In response to this statement, Kaiser Trucking stated, "No objection, providing that Liberty Mutual was not a party to that litigation and there was no obligation to provide them notice of the suit."

[¶39.] Additionally, Liberty Mutual alleged, in SUMF No. 11, that "Plaintiffs have no knowledge that [Bianca] or her father sent any notices or legal papers to Liberty Mutual or otherwise cooperated in conjunction with Liberty Mutual with

respect to the [Lawsuit]." In support, it referred to Kaiser Trucking's answers to interrogatories attached to Liberty Mutual's counsel's affidavit. These interrogatories reveal that, when asked whether they were aware of any efforts by Bianca or Charles to provide Liberty Mutual notice of the Lawsuit and to cooperate with Liberty Mutual in the investigation, settlement, or defense of the Lawsuit, Kaiser Trucking and Simons stated that they did not know of any actions taken by Bianca or Charles related to the Lawsuit, nor did they have any information as it concerns communications that Bianca and Charles may have had with Liberty Mutual. When responding to Liberty Mutual's SUMF No. 11, Kaiser Trucking simply stated, "Objection. Neither Kaiser Trucking or Simons have any information as it concerns communications between [Bianca] and Liberty Mutual."

[¶40.] On appeal, Kaiser Trucking does not contend that Liberty Mutual was notified of the Lawsuit. Indeed, it acknowledges that this did *not* occur. Instead, Kaiser Trucking focuses solely on the word "received" in sub-section (B)(2). After first explaining that service of process of the Lawsuit was effected upon Bianca, as authorized in SDCL 15-7-6, when the legal papers were served upon the Secretary of State, Kaiser Trucking then notes that the follow-up mailing to Bianca's last known address required by SDCL 15-7-7 was "returned to sender." As such, Kaiser Trucking claims there is no evidence showing that Bianca (or Charles, who was not a named party in that suit) ever *received* any such notices or legal papers and, therefore, it was not possible for them to provide these documents to Liberty Mutual as required under the terms of the policy.

[¶41.]       In response to Kaiser Trucking's argument that an issue of fact remains regarding the failure to provide notice of the Lawsuit because neither Bianca nor Charles ever "received" these legal papers, Liberty Mutual asserts that GWCC was "orchestrating" the underlying lawsuit and was in the best position to ensure that Liberty Mutual was informed about the Lawsuit, given the prior communications between the two companies.

[¶42.]       Under SDCL 15-6-56(c)(2), "[a] party opposing a motion for summary judgment shall include a separate, short, and concise statement of the material facts as to which the opposing party contends a genuine issue exists to be tried." Additionally, a non-moving party "may not rest upon the mere allegations or denials of his pleading, but his response . . . must set forth specific facts showing that there is a genuine issue for trial.  If he does not so respond, summary judgment, if appropriate, shall be entered against him."  SDCL 15-6-56(e); *see City of Sioux Falls v. Strizheus*, 2022 S.D. 81, ¶ 27, 984 N.W.2d 119, 126–27.

[¶43.]       Based on the record below, there is no dispute that Liberty Mutual did not receive notice of the Lawsuit, and it also appears that neither party disputes the fact that Liberty Mutual's insureds (Charles and Bianca) did not receive the legal papers related to the underlying Lawsuit.  Although this Court has not addressed the question whether a scenario like this precludes an insurer from asserting a lack of compliance with a notice requirement, other courts have determined that if no notice of lawsuit or legal process was received by the insured, the language of the insurance policy does not require the insured to forward something that was never received.  *See, e.g.*, *Fisk v. Atl. Nat'l Ins. Co.*, 236 A.2d 688, 691 (N.H. 1967) (noting

-23-

that the terms of a liability policy requiring notice of any summons or legal process to be forwarded to the insurer would not be violated if an insured did not receive a copy of such documents, unless the insured "knowingly by his own actions avoid[ed] receipt of the process"). Similar to the service of the underlying Lawsuit on the Secretary of State here, in *Fisk*, the service of the injured party's lawsuit upon the insured was accomplished pursuant to a statute authorizing service on the Massachusetts Motor Vehicle Commissioner, with a copy sent in a registered letter to the insured at the insured's last known address; however, such letter was returned to the sender as "unclaimed." *Id.* at 690. The appellate court in *Fisk* determined that a remand was necessary to determine whether the failure of receipt was due to the insured's "own unjustifiable action." *Id.* at 691; *see also Tennant v. Farm Bureau Mut. Auto. Ins. Co.*, 141 N.Y.S.2d 449, 452−53 (N.Y. App. Div. 1955) (considering an appeal in a direct action where a jury had rejected an insurer's claim that it was not liable due to noncompliance with a condition requiring notice of a lawsuit because the insured had no notice or knowledge of the suit, and reversing the verdict because the evidence did not sustain this factual determination).

[¶44.] Unlike in *Fisk* and *Tennant*, here, neither party disputes the fact that Bianca did not receive notice of the Lawsuit, nor have any facts been alleged showing that Bianca intentionally avoided receipt of process. But more importantly, the insurance policies at issue in both *Fisk* and *Tennant* contained language referring only to the *insured* being required to forward any notice of claim or legal process received by the insured. *Fisk*, 236 A.2d at 690; *Tennant*, 141

N.Y.S.2d at 450. Here, the relevant language in Liberty Mutual's policy is broader. The action required under Part E(B)(2) is not confined to the insured. Rather this provision requires "*[a] person* seeking any coverage" to promptly send Liberty Mutual "copies of any notices or legal papers received in connection with the accident or loss." (Emphasis added.) Admittedly, the term "received" is more fitting when referring to an insured who has been sued. However, as noted above, in a direct action filed by an injured third party under SDCL 58-23-1, the injured is, in essence, stepping into the shoes of the insured and must, therefore, comply with the terms of the policy that must be met to obtain coverage, at least with respect to those terms within the control of the injured party.

[¶45.] Based on the record here, there were no impediments precluding Kaiser Trucking from sending copies of the legal papers of its Lawsuit against Bianca to Liberty Mutual.[12] Kaiser Trucking has admitted that it is GWCC that is seeking a recovery in the current lawsuit, and GWCC had communicated with Liberty Mutual numerous times in an attempt to obtain liability coverage from Liberty Mutual, prior to Kaiser Trucking's lawsuit against Bianca. And notably, in the last series of emails exchanged between Liberty Mutual and GWCC, Liberty Mutual expressly requested that GWCC contact Liberty Mutual if it decided to file suit. Given these circumstances, Kaiser Trucking should not be allowed to shield itself from the consequences arising from the fact that Liberty Mutual was not

---

12. The same law firm represented Kaiser Trucking in both the suit against Bianca and the direct action suit against Liberty Mutual.

provided notice of the Lawsuit when it was entirely within Kaiser Trucking's power to do so.

[¶46.] Moreover, it is not unreasonable to require Kaiser Trucking, as the party stepping into the shoes of the insureds seeking "any coverage" under the terms of the policy, to provide notice of its Lawsuit to Liberty Mutual. Indeed, some courts have determined that it is entirely proper for an injured third-party claimant to satisfy such notice requirements under the policy, in order to avoid the ramifications that noncompliance with the notice requirement may bring. *See Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941) (holding that injured claimant seeking recovery from insured's liability insurance company "may perform the conditions of the policy . . . requiring notice of the accident, notice of suit, etc., in order to prevent lapse of the policy through failure of the insured to perform such conditions"); *Jameson v. Farmers Mut. Auto. Ins. Co.*, 309 P.2d 394, 399 (Kan. 1957) (noting that because the injured claimant cannot recover under the policy unless the insurer is notified of the suit, it is proper for the claimant to satisfy the notice requirements); *Kincaid v. Smith*, 167 F. Supp. 195, 203 (N.D. Ohio 1957) (holding that "Ohio is not alone in holding that an injured person has such a potential interest and substantial right in the policy as to comply with the terms of the policy and make them effective in his behalf" and citing several cases from other states supporting this premise). Because it is undisputed that neither the Spotted Thunders nor Kaiser Trucking notified Liberty Mutual of the Lawsuit, we conclude that the circuit court did not err when determining that there is an absence of a

genuine issue of fact regarding the noncompliance with the condition precedent in Part E(B)(2) of Liberty Mutual's policy.

[¶47.] However, we must also address whether Liberty Mutual was required to show it was prejudiced by the lack of cooperation from the insured or the lack of notice of the lawsuit. Although neither party has briefed this point, nor was it raised below, we note that other courts have determined that an injured third party may recover from a liability insurer notwithstanding noncompliance with cooperation or timely notice provisions if the insurer was not prejudiced by the noncompliance. *See* 7A Couch on Insurance § 106:4 (3d ed., Westlaw database updated Dec. 2025) (observing that "the insurer, generally, has the burden of proof on the prejudice issue and is required to raise it as an affirmative defense in a direct action") and § 106:24 (noting cases in which the failure of an insured to cooperate or give notice of an action brought against him by an injured claimant, although required by the policy, is not a defense if there was no prejudice to the insurer).

[¶48.] Even in insurance coverage cases which are not direct actions brought by injured third parties, we have determined that a failure to strictly comply with a notice provision required by an insurance policy did not bar recovery unless an insurer shows prejudice caused by the noncompliance. *See Auto-Owners Ins. Co. v. Hansen Housing, Inc.*, 2000 S.D. 13, ¶ 31, 604 N.W.2d 504, 513 (addressing untimely submission of proof of loss); *Union Pac. R.R. v. Certain Underwriters at Lloyd's London*, 2009 S.D. 70, ¶ 24, 771 N.W.2d 611, 618 (finding that insurer was prejudiced by untimely notice of loss). We recognized this general rule in *Kaiser I*. 2022 S.D. 64, ¶ 15, 981 N.W.2d at 651 (noting that an insured need not demonstrate

compliance with a condition precedent if noncompliance "did not prejudice the insurer").

[¶49.] It has been noted in secondary sources that "substantial prejudice by an insured's noncompliance is clearly established by the fact that a default judgment has been entered against an insured." 7A Couch on Insurance §106:4; *see also Tennant*, 141 N.Y.S.2d at 453 (holding that the lack of notice and the entry of a default judgment "deprived the [insurer] of the vital and essential right to answer or otherwise move as to the complaint served upon its insured; to elect whether to defend or to attempt to negotiate a settlement; or in the event of a trial to conduct the defense and litigate issues relating to liability and damage"). Also, in *Union Pacific Railroad*, we noted that although "prejudice generally is a question of fact, courts have held that 'the issue of prejudice may become a question of law if all reasonable persons would conclude the insured did not provide notice in a reasonable time.'" 2009 S.D. 70, ¶ 25, 771 N.W.2d at 618–19 (further recognizing that "courts have found 'summary judgment to be appropriate in several cases where the insured's breach of a notice or cooperation clause prevented the insurer from conducting a meaningful investigation of a claim or presenting a viable defense to a claim'" (citation omitted)).

[¶50.] The undisputed facts show that such is the case here. We thus conclude, consistent with the above authorities, that there is no genuine dispute that Liberty Mutual was prejudiced by the lack of notice of the underlying Lawsuit prior to a default judgment being entered. Therefore, the circuit court's grant of

summary judgment to Liberty Mutual with respect to the noncompliance with Part E(B)(2) was not erroneous, as it relates to Liberty Mutual's excess liability coverage.

## Conclusion

[¶51.] For the above reasons, we reverse the circuit court's grant of summary judgment to Liberty Mutual with respect to the liability coverage required by SDCL 32-35-70. We affirm the grant of summary judgment in favor of Liberty Mutual with respect to any excess liability coverage provided in its policy.

[¶52.] Affirmed in part, reversed in part, and remanded for the entry of an amended judgment consistent with this opinion.

[¶53.] JENSEN, Chief Justice, and SALTER and MYREN, Justices, and KERN, Retired Justice, concur.

[¶54.] GUSINSKY, Justice, not having been a member of the Court at the time this action was considered by the Court, did not participate.